# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) CHRISTOPHER BARNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-cv-00064-TCK-FHM** |
| | ) | |
| **(1) HALL, ESTILL, HARDWICK, GABLE,** | ) | |
| **GOLDEN & NELSON, P.C.,** | ) | |
| **(2) J. PATRICK CREMIN,** | ) | |
| **(3) JOHNATHAN L. ROGERS, and** | ) | |
| **(4) UNIVERSITY OF TULSA, a private** | ) | |
| **university,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are (1) Defendant University of Tulsa ("TU")'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") (Doc. 13), (2) Defendants Hall, Estill, Hardwick, Gabel, Golden & Nelson, P.C.'s, J. Patrick Cremin's, and Johnathan L. Rogers's ("Hall Estill Defendants") Motion to Dismiss pursuant to the Oklahoma Citizens Participation Act (Doc. 34), (3) TU's Motion to Dismiss pursuant to the Oklahoma Citizens Participation Act (Doc. 35), (4) TU's Objection to Ruling by Magistrate (Doc. 37), and (5) Hall Estill Defendants' Motion to Strike (Doc. 48). For the reasons discussed below, Hall Estill Defendants' and TU's Motion to Dismiss pursuant to the OCPA and TU's Motion to Dismiss pursuant to Rule 12(b)(6) are **GRANTED**, and TU's Objection to Ruling by Magistrate and Hall Estill Defendants' Motion to Strike are **DENIED AS MOOT**.[1]

---

[1] The OCPA contemplates a hearing on a motion to dismiss filed pursuant to the OCPA. OKLA. STAT. tit. 12. § 1433. The Court finds a hearing unnecessary in this case, as the Court does not require additional legal argument to rule on these motions. Additionally, the OCPA instructs the Court to consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based," indicating that the Parties will not be permitted to present further evidence at an OCPA hearing. OKLA. STAT. tit. 12. § 1435(A). Separately,

1

# I.      Background

The instant case stems from events that occurred in *Christopher Barnett v. Tulsa Community College*, a lawsuit currently pending in Tulsa County District Court. (Doc. 29, Ex. 2) ("TCC case"). Plaintiff alleges that, in advance of the hearing on Plaintiff's motion for restraining order and temporary injunction in the TCC case, Defendants contacted the Oklahoma Attorney General's Office ("AG's office") to make a false threat report. In response to this, the AG's office reported potential threats to the Tulsa County Sheriff's Office and, upon arriving for a hearing on his motion, the presiding judge, Judge Jefferson D. Sellers ("Judge Sellers"), identified Plaintiff to a Tulsa County Sheriff's Deputy and instructed Plaintiff to speak to the Deputy. The Deputy asked Plaintiff if he had made any threats against anyone and, upon his denial, informed him that she had received a report of a threat that he made. Finally, the Deputy instructed Plaintiff to remain in the courtroom until he received permission to leave.

Plaintiff filed this action in Tulsa County District Court on January 5, 2018, in which he alleged the following claims against all Defendants: (1) unlawful seizure pursuant to 42 U.S.C. § 1983, (2) retaliation pursuant to 42 U.S.C. § 1983, (3) false imprisonment, (4) false light, (5) abuse of process and (6) civil conspiracy. Hall Estill Defendants removed this action to this Court on January 30, 2018. (Doc. 2.) TU filed their Motion to Dismiss pursuant to Rule 12(b)(6) on February 6, 2018, and both TU and Hall Estill Defendants filed their Motions to Dismiss pursuant to the Oklahoma Citizens Participation Act on March 6, 2018. (Docs. 13, 34 and 35.)

---

Plaintiff has requested an evidentiary hearing prior to the Court ruling on Defendants' motions to dismiss pursuant to the OCPA. Because the OCPA states that the Court must consider only the Parties' pleadings and affidavits, Plaintiff's request for an evidentiary hearing is also denied.

**II.     Motion to Dismiss Pursuant to the Oklahoma Citizens Participation Act**

**A.     Oklahoma Citizens Participation Act**

The Oklahoma Citizens Participation Act ("OCPA") is an anti-strategic lawsuit against public participation ("anti-SLAPP") law.  Its stated purpose is "to encourage and safeguard the constitutional rights of persons to 'petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file a meritorious lawsuit for demonstrable injury.'"  *See Anagnost v. Tomecek*, 2017 OK 7, 390 P.3d 707, 709-10.  It accomplishes these goals by allowing parties to file special motions to dismiss legal actions that relate or are in response to free speech.  *Id.*  In a motion to dismiss brought under the OCPA, the movant must show by a preponderance of the evidence that the challenged claim "is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right of petition, or the right of association."  *See Krimbill v. Talarico*, 2018 OK CIV APP 37, 417 P.3d 1240, 1245-46.  The burden then shifts to the party bringing the claim to show "by clear and specific evidence a *prima facie* case for each essential element of the claim in question."  *Id.*

A *prima facie* case consists of evidence sufficient as a matter of law to establish a given fact, if not rebutted or contradicted.  *See id.* at 1246.  In determining whether a *prima facie* case has been shown, the Court may consider the pleadings, as well as supporting and opposing affidavits stating the facts on which the liability or defense is based.  *Id.* at 1246-47.  This standard exceeds both the notice pleadings standard of Oklahoma state court and the federal court pleadings standard of "sufficient to state a claim to relief that is plausible on its face."  *See id.*, Fed. R. Civ. P. 12(b)(6); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  It does not, however, impose a higher burden of proof than that required of the plaintiff at trial and allows the plaintiff to use circumstantial evidence.  *See Krimbill*, 417 P.3d  at 1246.

## B.     Is the OCPA Applicable in Federal Court?

Hall Estill Defendants removed this case pursuant to the Court's federal question jurisdiction over Plaintiff's § 1983 claims.   (Doc. 2.)   Additionally, the Court exercises supplemental jurisdiction over Plaintiff's state law claims, as the claims are so related that they form part of the same case or controversy.   *See* 28 U.S.C. § 1367 (2018).   In exercising supplemental jurisdiction, the Court must apply state substantive law and federal procedural law. *See Felder v. Casey*, 487 U.S. 131, 151-52 (1988); *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 426-28 (1996); *Erie R.R. Tompkins*, 304 U.S. 64 (1938).   However, "[c]lassification of a law as 'substantive' or 'procedural' . . . is sometimes a challenging endeavor."   *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).   In cases where the line between procedure and substance is unclear, the Supreme Court has set forth a multi-faceted analysis designed to prevent both forum shopping and the inequitable administration of laws.   *See Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018) (citing Erwin Chemerinsky, *Federal Jurisdiction* § 5.3, at 351-365 (7th ed. 2016)).

The Court must first look to whether a there is a valid federal statute or federal rule of procedure on point, such as a provision of the Federal Rules of Civil Procedure ("Rules") or the Federal Rules of Appellate Procedure.   If so, then the federal law should be applied, even if there is a conflicting state law.   If there is no valid federal statute, the Court must then determine if the application of the state law is likely to be outcome determinative.   If the state law is not outcome determinative, then federal law must be used.   However, if the state law is outcome determinative, then the Court must determine if there is an overriding federal interest justifying the application of federal law.   If state law is outcome determinative and there is no countervailing federal interest, then state law applies.   Erwin Chemerinsky, *Federal Jurisdiction* § 5.3, at 351-365 (7th ed. 2016).

Plaintiff argues that the OCPA does not apply in this case. In support of this position, Plaintiff argues that (1) the OCPA does not apply in federal court, (2) Defendants waived the application of the OCPA by removing this action, and (3) the OCPA does not protect Defendants, as they have engaged in defamation. The Court addresses each of these arguments in turn. First, in support of the position that the OCPA does not apply in federal court, Plaintiff cites the Tenth Circuit's decision in *Los Lobos*, in which the Tenth Circuit held that New Mexico's anti-SLAPP statute was inapplicable in federal court, as the "plain language" of the statute "reveals the law is nothing more than a procedural mechanism designed to expedite the disposal of frivolous lawsuits aimed at threatening free speech rights." *Los Lobos*, 885 F.3d at 668-69. Defendants, however, all argue that the OCPA is substantive, rather than procedural. (Docs. 44 and 45.)

## 1. Does *Los Lobos* govern this case?

*Los Lobos* does not control whether the OCPA applies in federal court. *Los Lobos* is carefully limited to the New Mexico law it addresses, noting that the holding is based on the text of the New Mexico law and distinguishing it from other anti-SLAPP statutes that might be applicable in federal court, such as statutes "that shift substantive burdens of proof, or alter substantive standards." *Los Lobos*, 885 F.3d at 670. The Tenth Circuit also noted that nothing in the New Mexico statute alters the underlying standard under which the court will decide the case. *Id*. Additionally, the Tenth Circuit noted that while anti-SLAPP statutes all have common elements, there are significant differences, requiring that each state's statutory scheme must be evaluated separately. *Id*. at 672 n.7.

*Los Lobos* also repeatedly contrasts the New Mexico statute with the California anti-SLAPP statute, noting that the California statute shifted substantive burdens and altered substantive standards. To prevail on a motion under the California law, the defendant must make a *prima facie* showing that the plaintiff's suit arises from an act in furtherance of the defendant's

constitutional right to free speech. The burden then shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim. If the plaintiff cannot establish that, the case will be dismissed. *See Los Lobos*, 885 F.3d at 670; *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). Though the OCPA employs distinct substantive standards, it employs the same burden shifting structure as California. Additionally, both the California statute and the OCPA do not require a defendant to show that the plaintiff has not alleged facts "sufficient to state a claim to relief that is plausible on its face" to meet their burden in sustaining a motion to dismiss. *See* FED. R. CIV. P. 12(b)(6).

Finally, *Los Lobos* looked to New Mexico courts' construction of the anti-SLAPP law when holding the statute to be procedural. *See Los Lobos*, 885 F.3d at 670. By contrast, Oklahoma courts have found the OCPA to be substantive. *See Steidley v. Cmty. Newspaper Holdings*, Inc., 2016 OK CIV APP 63, 383 P.3d 780, 785-787. *Steidley* noted that the OCPA created a new defense to causes of action involving First Amendment rights, which indicates that the OCPA is not merely procedural. *Id.*; OKLA. STAT. tit. 12, § 1434.

## 2. Is there a federal statute on point?

In determining whether there is a federal statute on point, the Court must look to whether application of a state law would result in a "direct collision" with a federal statute, such as the Federal Rules of Civil Procedure. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980). In this case, though the parties have presented no arguments regarding whether the OCPA presents a direct collision with any federal statutes, it is possible that the OCPA presents a conflict with Rules 8, 12, and 56. *See, e.g.*, *Mathiew v. Subsea & (US) LLC*, 2018 U.S. Dist. LEXIS 50647, at *17-21 (S.D. Tex. March 9, 2018) (holding that the Rules establish the manner in which a party can obtain dismissal of a claim before trial, and so conflict with Texas's anti-SLAPP statute); *United States ex. rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir.

1999) (holding that California's anti-SLAPP statute was not in direct collision with Rules 8, 12, and 56, despite the similar purposes of the statute and the Rules, because there is no indication that Rules 8, 12, and 56 were intended to "occupy the field").

In this case, the Court holds that the OCPA does not conflict with the Rules. Unlike the Rules, the OCPA is a statement of a substantive policy of the state of Oklahoma to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extend permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." OKLA. STAT. tit. 12 § 1430. Though the Rules provide mechanisms for dismissal of a claim prior to trial, they do not provide any policy goals, nor any burden shifting and changes to substantive standards to enact these goals. *See Newsham*, 190 F.3d at 963.

Moreover, there is no direct collision between the Rules and the OCPA because a motion to dismiss under the OCPA will not interfere with the operation of Rules 8, 12, or 56. *See id.* at 972. These Rules look to different questions than the OCPA and have different evidentiary requirements. Should the Plaintiff survive the Motion to Dismiss under the OCPA, Defendants may, without redundancy or conflict, make motions under Rules 8, 12, and 56. The two can "exist side by side, each controlling its own intended sphere of coverage without conflict." *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751-52 (1980). Accordingly, there is no direct collision between the Rules and the OCPA.

### 3. Is the application of state law likely to be outcome determinative?

Because there is no federal statute on point, the Court must look to whether the application of the state law, the OCPA, is likely to be outcome determinative. In this case, it is. The OCPA has a burden shifting provision that, after the defendant meets an initial burden, the plaintiff must show a *prima facie* case by "clear and specific evidence." OKLA. STAT. tit. 12 § 1434. The OCPA

also alters the substantive standards of a traditional motion to dismiss. The defendant's burden is lower than Rule 12(b)(6)'s requirement that the defendant show that plaintiff has not alleged facts "sufficient to state a claim to relief that is plausible on its face," while the plaintiff's burden to show a *prima facie* case is higher than the 12(b)(6) standard. *See id.*: *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Many jurisdictions have recognized that burdens of proof are outcome determinative in a civil action, as placing the burden on the wrong party generally constitutes reversible error. *See, e.g.*, *Carvalho v. Raybestos-Manhattan, Inc.*, 794 F.2d 454, 455 (9th Cir. 1986) (citing *Voigt v. Chicago & Northwestern Railway*, 380 F.2d 1000, 1004 (8th Cir. 1967) (collecting cases)); *Hersch Buildings, Inc. v. Steinbrecher*, 198 Neb. 486, 490-91 (1977); *Schumann v. McGinn*, 307 Minn. 446, 455 (1976); *Deckard v. Adams*, 246 Ind. 123, 127 (1965). Additionally, substantive standards are likely to be outcome determinative. Accordingly, application of the OCPA will be outcome determinative.

### 4. Is there an overriding federal interest?

Because the OCPA will be outcome determinative in this case, the Court must determine if there is an overriding federal interest justifying the application of federal law. If there is no countervailing federal interest, then state law applies. In this case, because *Erie* and its progeny require that the Court apply state substantive law, the policy aims of *Erie*—discouragement of forum-shopping and avoidance of inequitable administration of the laws—apply to this case. *See Hanna v. Plumer*, 380 U.S. 460, 468 (1965). In this case, the twin aims of *Erie* do not justify applying federal law. For example, though in this case the Plaintiff did not attempt to file this case in federal court, if anti-SLAPP provisions are not held to apply in federal court, a litigant interested in bringing a meritless SLAPP claim would have significant incentive to shop for a federal forum. Similarly, it would be inequitable to disadvantage a litigant for being in a federal court, if that

litigant was otherwise entitled to the substantive protections of an anti-SLAPP statute. *See Newsham*, 190 F.3d at 973. Therefore, the Court concludes the OCPA applies in federal court.

### C. Does the OCPA apply to the claims of this case?

Plaintiff argues that Defendants have waived their right to the protection of the OCPA by removing this case to federal court. (Docs. 41 and 42.) Plaintiff has cited no cases to support this argument, however, and the Court has similarly found no cases. Because this Court has held that the OCPA applies to the pending state law claims, Defendants have not waived their right to the protection of the OCPA. Plaintiff also argues that the OCPA does not protect Defendants, as they have engaged in defamation. This argument is similarly unavailing. First, Plaintiff has not alleged any defamation cause of action and cannot now summarily allege defamation to avoid an otherwise-applicable rule. *See Masters v. Daniel Int'l. Corp.*, No. 87-1290-C, 1991 U.S. Dist. LEXIS 7595, at *25 n.8 (D. Kan. May 3, 1991) (plaintiff could not effectively amend his complaint with new causes of action, even based on the same facts, when briefing a Rule 12(c) motion). Similarly, even if Plaintiff had alleged defamation, the OCPA contains no *per se* exception for alleged defamation. OKLA. STAT. tit. 12 § 1430 *et. seq.* Finally, Texas courts applying the Texas anti-SLAPP statute, which, for reasons discussed *infra* part II. D, are highly persuasive to this Court, frequently apply that law to defamation claims. *See, e.g., ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900-01 (Tex. 2017); *Lippincott v. Whisenhunt*, 462 S.W. 3d 507, 508-511 (Tex. 2015). Accordingly, even if Plaintiff had alleged defamation, if Defendants can show by a preponderance of the evidence that Plaintiff's claims are based on, relate to, or are in response to the movant's exercise of the right of free speech, the right of petition, or the right of association, Defendants have met their burden, and the burden shifts to the Plaintiff.

Though Defendants' briefs are unclear, they may suggest their Motions to Dismiss under the OCPA apply to all of Plaintiff's claims. (Docs. 34 and 35.) However, the OCPA applies only

to Plaintiff's state law claims and cannot operate to dismiss Plaintiff's federal claims. Federal law governs both substance and procedure in the litigation of federal claims in federal court. *Gasperini*, 518 U.S. at 426-28; *Jenkins v. Miller*, No. 12-cv-184, 2017 U.S. Dist. LEXIS 160793, at *106 (D. Vt. Sept. 29, 2017) (Vermont's anti-SLAPP statute cannot apply to federal claims); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-cv-04050-MEJ, 143 F. Supp. 3d 982, 998 (N.D. Cal. Nov. 10, 2015) (California's anti-SLAPP law does not apply to federal law causes of action); *Dorton v. NBG Props., LLC*, CV 15-2552 FMO (MRWx), 2015 U.S. Dist. LEXIS 85189, at *3 (C.D. Cal. June 30, 2015) (California's anti-SLAPP statute is not applicable to federal claims); and *South Middlesex Opportunity Council, Inc. v. Town of Framingham*, No. 07-12018-DPW, 2008 U.S. Dist. LEXIS 85764, at *26 (D. Mass. Sept. 30, 2008) ("There is no support for applying the anti-SLAPP statute to federal claims."). Accordingly, the OCPA cannot operate to dismiss Plaintiff's two claims brought pursuant to §1983.

Finally, Defendants also argue that Plaintiff has waived his argument that the OCPA does not apply in federal court, as Plaintiff himself has made a motion pursuant to the OCPA in this action. (Doc. 25.) In response, Plaintiff appears to argue that the OCPA conflicts with the Federal Rules of Civil Procedure as applied to Defendants, but not to Plaintiff himself. (Doc. 41.) Though the Court finds Plaintiff's argument unavailing, Plaintiff has still not waived his argument that the OCPA does not apply in federal court due to the intervening change in the law: the motion that Defendants allege waived this argument was filed on February 21, 2018, prior to the Tenth Circuit's ruling in *Los Lobos* on March 12, 2018. *See* Doc. 25; *Los Lobos*, 885 F.3d 659.

### D.    Have Movants met their Initial Burden?

Defendants are initially required to show by a preponderance of the evidence that Plaintiff's state law claims of false imprisonment, false light, abuse of process and civil conspiracy relate to Defendants engaging in activity protected by the OCPA—the right of free speech, the right to

petition, or the right of association. *See* OKLA. STAT. tit. 12 § 1431. The legislature has defined

these protected activities as follows:

> "2. 'Exercise of the right of association' means a communication
> between individuals who join together to collectively express,
> promote, pursue or defend common interests" OKLA. STAT. tit. 12
> sec. 1431(2).
> "3. 'Exercise of the right of free speech' means a communication
> made in connection to a matter of public concern." A matter of
> public concern is "an issue related to (a) health or safety, (b)
> environmental, economic, or community well-being, (c) the
> government, (d) a public official, or (e) a good, product, or service
> in the marketplace." OKLA. STAT. tit. 12, sec. 1431(3), (7).
> "4. 'Exercise of the right to petition' means any of the following:[2] "
> OKLA. STAT. tit. 12, sec. 1431.

The parties have cited no federal case construing the OCPA, and the only such case the

Court has found predates the Tenth Circuit's decision in *Los Lobos*. This case does not appear to

engage in the detailed analysis now required to determine whether the OCPA is procedural or

substantive. *See Bruning v. City of Guthrie*, No. CIV-15-0003-HE, 2015 U.S. Dist. LEXIS

108663, at *32 (W.D. Okla. Aug. 18, 2015) (finding the OCPA procedural). Indeed, it appears

that only a small number of Oklahoma state courts have construed the OCPA. However, as all

Defendants note, the OCPA is modeled on the TCPA, Texas's anti-SLAPP statute. (Docs. 34 and

35.) Indeed, the definitions of "exercise of right of association," "exercise of the right of free

speech," and "exercise of the right to petition," are substantially identical. *See* OKLA. STAT. tit.

12, § 1430 (3), (7); TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3), (7). Accordingly, Texas

cases interpreting the TCPA will be highly persuasive in this Court's analysis of the OCPA.

In this case, Plaintiff alleges that Defendants both contacted the AG's office—with whom

Plaintiff was engaged in separate litigation—and made a false claim of threat by Plaintiff. Though

---

[2] The definition of "exercise of the right to petition" continues with numerous sub-parts
that the Court omits because they are not implicated in the foregoing analysis. The Court does
not decide whether Defendants demonstrated that they exercised their right to petition.

Plaintiff never alleged the nature of the false claim of threat, the AG's office described the threat on the record as "counsel in another case, that is tangentially related to this one, involving the same or similar Plaintiffs [informed the AG's office] that in that case, the Plaintiff has made physical and verbal and written threats to counsel in that case." (Doc. 41-1.) All six of Plaintiff's claims, including his four state law claims, stem from this factual allegation.

The plain text of Plaintiff's allegations indicate that Plaintiff's state law claims relate to Defendants engaging in their right of free speech, as the alleged communication was made in connection with an issue related to health or safety. *See* OKLA. STAT. tit. 12 § 1431. Threats, by their very definition, indicate an intention to inflict injury or harm, which concerns both health and safety. *See Bouvier Law Dictionary*, Threat; *cf. Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996) (holding that reporting physical assaults is protected speech). Texas courts have also found similar communications to concern health and safety under the TCPA. For example, in *Cavin v. Abbott*, the court held that "health" and "safety" includes that of private parties embroiled in an otherwise-private dispute far removed from any public participation in government. *See* 545 S.W.3d 47, 63-64 (Tex. App.–Austin, 2017). In *Cavin*, the defendants voiced their concern that their daughter's career and relationship choices were a result of mental illness or domestic abuse to a private investigator, a church-based counselor, their daughter's friends and family, and their daughter's employer. *See id.* at 50-53. The court held that these communications were made in connection with health and safety, as they concerned mental illness or domestic abuse. *See id.* at 63-64. Like domestic abuse, the threat described by the AG's office represents an unpredictable danger to health and safety.

Even communications that hold only a "tangential relationship" to matters of public concern are an exercise of the right of free speech under the TCPA. *See ExxonMobil*, 512 S.W.3d at 900-01 (Tex. 2017). In *ExxonMobil*, internal company communications still related to a "matter

of public concern" because they concerned another employee's alleged failure to perform activities that, at least in part, were meant to reduce environmental, health, safety, and economic risks. If Plaintiff did make the threat that the AG's office described, it bears at least as close a relationship to health and safety as those internal company communications. Accordingly, Defendants have met their initial burden to show, by a preponderance of the evidence, that Plaintiff's state law claims are based on, relate to, or are in response to the movant's exercise of the right of free speech.

Finally, Plaintiff's allegation that Defendants' claim of a threat was false does not change the Court's conclusion that Defendants have met their initial burden. In *ExxonMobil*, the court found communications to be on a matter of public concern despite the plaintiff's claim that the substance of these internal communications was false. *See* 512 S.W.3d at 900-01. Similarly, in *Lippincott*, the court held that internal emails allegedly containing disparaging comments about the plaintiff, employed by defendants as a certified registered nurse anesthetist, were made in connection with a matter of public concern when they included claims that the plaintiff had failed to properly provide medical services to patients, despite the plaintiff's apparent claim that these comments were false. *See* 462 S.W. 3d at 508-11. Therefore, Defendants have met their initial burden to show that Plaintiff's state law claims are based on, related to, or are in response to the movant's exercise of free speech.

### E.      Has Plaintiff Demonstrated a *Prima Facie* case?

Because Defendants have shown by a preponderance of the evidence that the challenged claim is based on, related to, or is in response to the movant's exercise of the right of free speech, the burden shifts to Plaintiff to show by clear and specific evidence that is sufficient as a matter of law to establish each essential element of each of his state law claims, if the evidence is not rebutted or contradicted. *See Krimbill*, 417 P.3d at 1245-46. Plaintiff has not done so. Indeed, Plaintiff has presented almost no evidence in this case. Instead, Plaintiff devoted his two response briefs

13

entirely to arguing that the OCPA does not apply to this case. The Court has rejected these arguments, *supra*, Part II.A-C, and found that the OCPA does apply in this case. Having found that, however, the Court has almost no evidence with which to determine whether Plaintiff has established each essential element of his state law claims.

The only evidence that Plaintiff has presented is a hearing transcript that addresses, in part, the allegedly false claim of threat that Defendants allegedly reported to the AG's office. (Doc. 41-1.) That transcript contains the following representations: (1) that the AG's office learned of a threat from counsel in another case with the same or similar Plaintiffs, and reported this threat to the Tulsa County Sheriff's Office, but is not aware of a specific threat that Plaintiff made in the TCC case; and (2) that Judge Sellers told the County Sheriff that he would identify Plaintiff to them. Later, off the record, Judge Seller invited Plaintiff to step outside with counsel to speak with the Deputy. Finally, the Deputy informed Plaintiff of the threat that was reported to their office and asked Plaintiff if he had made any threats. When Plaintiff denied making a threat, the Deputy told him to go into the courtroom and remain there until the proceedings were over.

These facts alone are not sufficient to establish each essential element of Plaintiff's state law claims. For example, to successfully claim false imprisonment a Plaintiff must show (a) detention of a person against his will and (b) unlawfulness of detention. *See Walters v. J.C. Penney Co.*, 2003 OK 100, 82 P.3d 578, 583. Plaintiff, however, has not presented evidence to establish that he was actually detained. Judge Sellers's description of Plaintiff's conversation with the Deputy does not establish that the conversation was against Plaintiff's will, as he said that he "invited" Plaintiff and his counsel to speak with the Deputy. Similarly, Plaintiff's attorney's

description of the Deputy's comments do not state or establish that Plaintiff was detained, rather than released to attend his hearing after a voluntary meeting.[3]

Similarly, to establish the tort of false light, Plaintiff must establish (a) that the alleged tortfeasor gave publicity to a matter concerning another that places the Plaintiff before the public in a false light, (b) that would be highly offensive to a reasonable person, and (c) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicity matter and the false light in which the other would be placed. *See Grogan v. KOKH, LLC*, 2011 OK CIV APP 34, 256 P.3d 1021, 1028. Plaintiff, however, has presented no evidence showing either falsity or Defendants' knowledge or reckless disregard as to that falsity.

Finally, Plaintiff has similarly not established each essential element of either abuse of process or civil conspiracy. Abuse of process requires, among other things, that Plaintiff establish Defendants improperly used the court's process. Plaintiff, however, has presented no evidence that Defendants engaged in "some extortionate perversion of lawfully initiated process to illegitimate ends" or even that Defendants initiated a lawful process—a lawsuit—at all. *Greenberg v. Wolfberg*, 1994 OK 147, 890 P.2d 895, 905. Similarly, civil conspiracy requires (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages. *See Schovanec v. Archdiocese of Okla. City*, 2008 OK 70, 188 P.3d 158, 175. The object, or the means of accomplishing that object, must be unlawful for liability to attach. *Id.* Plaintiff, however, has presented no evidence showing either an objective to be accomplished, a meeting of the minds between Defendants and the AG's office, any unlawful objectives, means, or acts, or any damages.

---

[3] The Court notes without deciding that Plaintiff's attorney's statement that Plaintiff told the Deputy that he not make a threat, (Doc. 41-1, at 5) and Plaintiff's allegation that he did not feel free to leave (Doc. 2-1 at ¶ 12-14) might constitute proof, had these statements been made under oath, such as in a deposition or affidavit.

Plaintiff has not demonstrated a *prima facie* case for any of his state law claims. Accordingly, Plaintiff's claims of false imprisonment, false light, abuse of process, and civil conspiracy are **DISMISSED** pursuant to the OCPA as to all Defendants.

### III.    Defendant University of Tulsa's Motion to Dismiss Pursuant to 12(b)(6)

#### A.    Rule 12(b)(6)

TU also brought a Motion to Dismiss pursuant to Rule 12(b)(6).  (Doc. 13.)  To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility" to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true."  *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."  *Id.*  (internal quotations omitted).  The plausibility requirement serves not only to weed out claims that do not, in the absence of additional allegations, have a reasonable prospect of success, but also to inform defendants of the actual grounds of the claims against them.  *Id.* at 1248.  In considering a motion to dismiss under Rule 12(b)(6), the Court generally may not consider facts outside of those alleged in the complaint.[4]

---

[4] To the extent that Plaintiff's Response to Defendant's Motion to Dismiss (Doc. 29) references factual allegations beyond the scope of Plaintiff's Complaint, the Court has

## B. State Action

The only remaining claims against TU are two claims under 42 U.S.C. § 1983 for unlawful seizure and retaliation. "In order to survive a Rule 12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must allege (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." *See Beedle v. Wilson*, 422 F.3d 1059, 1064-65 (10th Cir. 2005) (internal citations omitted). Acting "under color of any statute . . . " is known as "state action."

To be engaged in state action, defendants must "represent [the State] in some capacity, whether they act in accordance with their authority or misuse it." *See Nat'l Collegiate Ath. Ass'n. v. Tarkanian*, 488 U.S. 179, 191 (1988). Private conduct is out of reach from § 1983, no matter how unfair that conduct is. *See id*. A non-government entity, however, may still be engaged in state action if the Court determines that the alleged infringement is "fairly attributable to the state." *See Beedle*, 422 F.3d 1059. The Court can so determine through one of several tests, two of which are the "joint action" test and the "symbiotic relationship" test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447-48 (1995).

A plaintiff may allege that a defendant's action constituted state action under the "joint action" test by alleging that a private party was "a willful participant in joint action with the State or its agents." *See Gallagher*, 49 F.3d at 1453 (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). This theory encompasses theories of conspiracy between private and state actors. *See id.* at 1454. However, when a plaintiff attempts to assert the state action based on a joint action theory, "mere

---

disregarded these allegations, as "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss." *In re Qwest Commuc'n. Int'l, Inc. Secs. Litig.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. Jan. 13, 2004).

conclusory allegations with no supporting factual averments are insufficient. Rather, a plaintiff must specifically plead facts tending to show agreement and concerted action." *See Beedle*, 422 F.3d at 1073 (internal citations omitted).

A plaintiff may also allege that a defendant's actions constitute state action under the "symbiotic relationship" test by alleging that "the state has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity." *See Gallagher*, 49 F.3d at 1451 (internal citations omitted). Though there is no bright-line test, the Court must look to how far the state has insinuated itself into the operations of a particular private entity and when, if ever, the operations of a private entity become indispensable to the state. *See id.* at 1452. Extensive state regulation, the receipt of substantial state funds, and the performance of important public functions to do not necessarily establish the kind of symbiotic relationship between the government and a private party that is required for that party's action's to constitute state action. *See id.* at 1451.

## C.    Analysis

TU contends that Plaintiff's Petition fails to allege facts sufficient to establish state action for either of Plaintiff's claims pursuant to § 1983. (Doc. 13.) Plaintiff concedes that TU is a private entity (Doc. 2-1), but alleges that all Defendants were acting in conspiracy and that both TU and Hall Estill Defendants' conduct constitutes state action under both the joint action and symbiotic relationship test. (Doc. 29.) In support of these theories, Plaintiff alleged in his Petition that Defendants contacted the AG's office and made a false claim of threat by Plaintiff, and the AG's office reported this threat to the Tulsa County Sheriff's Office, but is not aware of a specific threat that Plaintiff made in the TCC case. Because of this false claim, prior to appearing for a hearing in the TCC case, Judge Sellers identified Plaintiff to a Sheriff's Deputy and required Plaintiff to speak with the Deputy.

Construing Plaintiff's allegations in the light most favorable to him, Plaintiff has failed to allege that either TU or Hall Estill Defendants engaged in state action, a necessary element of § 1983 claims. Though Plaintiff alleges that Defendants made a false threat report to the AG's office, and that false threat report caused Judge Sellers to identify him in open court, and caused a Sheriff's Deputy to speak with him, the facts that he alleges "are so general that they encompass a wide swath of conduct, much of it innocent" and do not plausibly allege state action under either the joint action or symbiotic relationship test. *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

### 1.      Joint Action

To successfully allege state action under the joint action test, Plaintiff must specifically plead facts tending to show agreement and concerted action. *See Beedle*, 422 F.3d at 1073. For example, when evaluating claims of § 1983 liability under the joint action test, the court in *Beedle* held that a § 1983 conspiracy claim against private citizens did not state a claim upon which relief could be granted where the plaintiff did not allege that the private citizen exerted influence over the state actor, that her judgment was substituted for that of the state actor, or that she participated in the decision to engaged in the alleged infringement of rights. *See id.* at 1071. Similarly, in *Peel v. Joint Comm'n*, the court held that a plaintiff's allegations that, after he filed a grievance against a nurse, that nurse and others, including the Oklahoma State Department of Health, retaliated against him by mishandling his medical records, harassing him with phone calls, and ultimately conspiring to kill him through denial of dialysis treatment were not sufficient to allege state action under the joint action test. *See* 577 F. App'x 757, 758-60 (10th Cir. 2014) (unpublished).

In this case, like in *Beedle*, Plaintiff has similarly not alleged that TU or Hall Estill Defendants exerted any influence over the AG's office, that their judgment was substituted for that of the AG's office, or that they participated in the decision to alert the Sheriff or have Plaintiff

questioned by the Sheriff's Deputy. Similarly, the conduct alleged by Plaintiff falls short even of the conduct found not to constitute state action in *Peel*. Accordingly, Plaintiff has not successfully alleged state action under the joint action test.

## 2. Symbiotic Relationship Test

To successfully allege state action under the symbiotic relationship test, the plaintiff must allege facts demonstrating that "the state must have so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity." *See Johnson v. Rodrigues*, 293 F.3d 1196, 1204 (10th Cir. 2002) (citing *Gallagher*, 49 F.3d at 1451). These relationships almost always involve a financial or contractual relationship. *See, e.g.*, *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n.*, 531 U.S. 288, 296-98 (2001) (holding that state athletic association was a state actor, and not a private contractor, where the state Board of Education supervised the association and the association enjoyed public schools' money making capacity as their own; collecting similar cases). However, a financial or contractual relationship is not sufficient to allege state action; to allege state action, the entwinement alleged must go beyond payments under government contracts, receipt of government grants and tax benefits, or enforcement of similar policy goals. *See Gallagher*, 49 F.3d at 1453 (so holding and collecting cases). Finally, though noneconomic benefits may, in combination with financial or contractual benefits, establish a symbiotic relationship, a private party assisting a state actor in enforcing a policy prohibiting certain items in a single concert was not a sufficient benefit to allege a symbiotic relationship. *See Gallagher*, 49 F.3d at 1453.

In sharp contrast to the cases above, Plaintiff has not alleged the presence of any contract or financial relationship between either TU or Hall Estill Defendants and the AG's office. Similarly, Plaintiff has not alleged that TU or Hall Estill Defendants were assisting the AG's office to enforce a specific policy. Further, Plaintiff has alleged only one instance of contact between

the AG's office and TU and Hall Estill Defendants. This level of assistance "falls far short of the degree of indispensability required . . . [and] is indistinguishable from a variety of benefits that government entities generally derive from public contracts." *Gallagher*, 49 F.3d 1453.

Plaintiff has failed to plausibly allege that TU acted as a state actor within the meaning of § 1983. Accordingly, Plaintiff's claims of unlawful seizure and retaliation are **DISMISSED** pursuant to Rule 12(b)(6).

## IV.    *Sua Sponte* **Dismissal of Claims Against Hall Estill Defendants Pursuant to 12(b)(6)**

Hall Estill Defendants did not file a motion to dismiss pursuant to Rule 12(b)(6); however, the Court may dismiss a complaint pursuant to Rule 12(b)(6) *sua sponte*. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997). *Sua sponte* dismissal under Rule 12(b)(6) is appropriate when it is "patently obvious" that the plaintiff could not prevail on the facts alleged and amendment would be futile. *See McKinney v. Okla. Dep't. of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991). Like TU, Hall Estill Defendants are private entities. (Doc. 2-1.) Moreover, Plaintiff has made the same § 1983 claims, based on the same factual allegations, against both TU and Hall Estill Defendants. Accordingly, it is patently obvious that Plaintiff's § 1983 claims against Hall Estill fail for the same reasons that they failed against TU as described, *supra*, Part III: Plaintiff has failed to allege state action, a necessary element of § 1983 claims against private entities.

Further, any opportunity to amend would be futile. Plaintiff has already been faced with a motion to dismiss pursuant to Rule 12(b)(6) on the same § 1983 claims, based on the same factual allegations. Plaintiff has already had the chance to amend his complaint in response to TU's Motion to Dismiss pursuant to Rule 12(b)(6) (Doc. 13), and has not done so. It would be a significant waste of resources and the Court's time to require Hall Estill Defendants to appear and seek dismissal of the remaining two § 1983 claims, especially as both parties are likely to present

the same TU and Plaintiff have already presented. *See Atkinson, Haskins, Nellis, Brittingham, Galdd & Fiasco, P.C. v. Oceanus. Ins. Group*, No. 13-cv-762-JED-PJC, 2014 U.S. Dist. LEXIS 108896, at * 18 (N.D. Okla. Aug. 7, 2014) (dismissing claims pursuant to 12(b)(6) *sua sponte* where requiring additional motions would be a waste of judicial resources).

## V.     No Award of Costs, Fees, or Sanctions

The OCPA provides that, if the Court orders dismissal under the OCPA, "the court shall award to the moving party: (1) Court costs, reasonable attorney fees and other expenses incurred in defending against the legal action *as justice and equity may require*; and (2) Sanctions against the party who brought the legal action as the court determines *sufficient to deter the party who brought the legal action from bringing similar actions*" described in the OCPA. OKLA. STAT. tit. 12 § 1438 (emphasis added). Defendants have requested an award of court costs, attorney fees, other expenses incurred in defending against the legal action, and sanctions against Plaintiff, but have cited no case in which a court interpreting the OCPA has made such an award. (Docs. 34 and 35.) Accordingly, based on the facts before it, the Court finds that justice and equity do not require an award of court costs, attorney fees, or other expenses. Similarly, the Court finds that sanctions are not necessary at this time to deter Plaintiff from bringing similar actions under the OCPA.

## VI.     Conclusion

For the reasons set forth above, the Court finds that Plaintiff's claims of false imprisonment, false light, abuse of process, and civil conspiracy are **DISMISSED** as to all Defendants pursuant to the OCPA and Plaintiff's § 1983 claims for unlawful seizure and retaliation are **DISMISSED** as to all Defendants pursuant to Rule 12(b)(6) for failure to state a claim.

Defendant University of Tulsa's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 13) is **GRANTED**.

Defendants Hall, Estill, Hardwick, Gabel, Golden & Nelson, P.C.'s, J. Patrick Cremin's, and Johnathan L. Rogers's Motion to Dismiss pursuant to the Oklahoma Citizens Participation Act (Doc. 34) is **GRANTED**.

Defendant University of Tulsa's Motion to Dismiss pursuant to the Oklahoma Citizen Participation Act (Doc. 35) is **GRANTED**.

Defendant University of Tulsa's Objection to Ruling by Magistrate (Doc. 37) is **DENIED** as moot.

Defendant Hall, Estill, Hardwick, Gabel, Golden & Nelson, P.C.'s, J. Patrick Cremin's, and Johnathan L. Rogers's Motion to Strike (Doc. 48) is **DENIED** as moot.

**IT IS THEREFORE ORDERED** that Plaintiff's case is **DISMISSED**. A separate judgment of dismissal is entered herewith.

**DATED THIS 23rd day of August, 2018.**

_Terence C Kern_

**TERENCE C. KERN**
**United States District Judge**